Terry Brian TOWER, Petitioner–Appellant,

v.

O.J. PHILLIPS, Respondent–Appellee.

No. 90–4038.

United States Court of Appeals, Eleventh Circuit.

Dec. 21, 1992.

Ronald W. Maxwell, Jacksonville, Fla., for petitioner-appellant.

Edward C. Hill, Jr., Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before ANDERSON, Circuit Judge, MORGAN and JOHNSON *, Senior Circuit Judges.

JOHNSON, Senior Circuit Judge:

This case arises on appeal following the district court's order denying and dismissing the petition for writ of habeas corpus of petitioner-appellant Terry Brian Towler.[1] For the reasons that follow, we vacate the district court's decision and remand the case to the district court for an evidentiary hearing.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

In November 1981, Towler, then age 19, was in a Florida jail facing three informations containing various state felony charges against him. The informations charged Towler with at least three life felonies (including one count of attempted murder, one count of armed burglary, and one count of armed kidnapping), two armed robbery felonies which the State argues were also life felonies, but which Towler asserts constituted only first degree felonies,[2] and several second degree felonies (including two counts of escape, one count of introduction of contraband into prison, and one count of possession of contraband). The Florida trial court appointed an assis-

tant public defender to represent Towler in connection with these charges.

On November 16, 1981, Towler entered into a written plea agreement with the State, pursuant to which Towler agreed to plead guilty to five of the offenses listed in the informations. Later the same day, Towler, accompanied by his attorney, appeared before the trial judge for a hearing to change Towler's plea on the five offenses from not guilty to guilty. During the hearing, the trial judge informed Towler of all of the charges against him and their maximum possible sentences, and engaged in a routine plea colloquy with Towler concerning those offenses Towler had agreed to plead guilty to. With one exception,[3] Towler indicated that he understood both the charges and the effect of a guilty plea. At the conclusion of the hearing, the trial judge accepted and entered Towler's plea of guilty to one count of armed kidnapping, one count of armed robbery, one count of introduction of contraband into prison, and two counts of escape. In return, the state dropped the remaining charges against Towler.

The written plea agreement identified the offenses to which Towler agreed to plead guilty and referenced the location of each offense in the original informations. The plea agreement did not, however, indicate the degree of the offenses that Towler would plead guilty to. The trial judge entered Towler's guilty pleas to the charges in the same degree as listed in the informations—i.e., the judgment reflected convictions of two life felonies and three second degree felonies.[4] However, Towler alleges

---

* *See* Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. Although this case been docketed under the name "Tower," we will refer to the petitioner by his proper last name of "Towler."

2. Towler and the State have apparently disputed the status of the armed robbery charges from the initiation of the criminal proceedings against Towler. The source of the dispute has centered on whether the underlying information's allegations that Towler committed robberies while carrying a knife were sufficient to charge Towler with robbery with a "deadly weapon." *See* Fla.Stat.Ann. § 812.13 (West Supp.1992).

3. In response to the court's question, "So far as we have gone, is that your understanding as far as this case is concerned," Towler told the judge that he understood the maximum sentence for armed robbery was 30 years. The judge had earlier listed the maximum sentence for armed robbery as life imprisonment. Although life imprisonment was the maximum sentence for armed robbery as a life felony, 30 years was the maximum sentence for armed robbery as a first degree felony.

4. Towler's guilty plea on the armed robbery charge was apparently entered as a life felony, although the court only imposed a 30-year sentence for the offense. Thirty years imprison-

that he executed the plea agreement only upon the advice of his attorney that the charges against him would be reduced to lesser-degree offenses as a result of the plea agreement.[5] Towler insists that had he known the true nature of the bargain, he would never have agreed to plead guilty to two life offenses which each carried mandatory sentences of thirty years to life in addition to three other second degree felonies.

Towler's attorney also represented Towler at his sentencing hearing, which was held on January 29, 1982. Shortly before the hearing commenced, Towler obtained a copy of his Presentence Investigation Report. On reading of the possible sentencing options discussed in the report, Towler alleges that he realized for the first time that the charges he pleaded guilty to had not been reduced to third degree offenses. Towler claims that he spoke with his attorney about the perceived error immediately before the hearing. Towler insists that he told his attorney at that time that the report was not consistent with his understanding of the nature of his pleas, and that he therefore wished to withdraw his guilty pleas and proceed with a jury trial.

The same judge who had accepted Towler's guilty pleas presided over the sentencing hearing. At the hearing, Towler's attorney informed the judge that Towler wished to change his pleas. When the judge asked what grounds Towler had for withdrawing the guilty pleas, Towler's attorney responded, "[M]y understanding is that we would simply prefer to have a Jury Trial on each of these offenses." Towler's attorney did not mention anything improper about the plea agreement. Towler himself did not object to his attorney's characterization of his request, nor did the trial judge question Towler directly about his request to withdraw his pleas. The judge denied Towler's motion for permission to change his pleas, and sentenced Towler to a total of 95 years in prison.

### B. Procedural History

In February 1982, Towler's attorney filed a motion with the sentencing judge to reduce Towler's sentence. The sentencing judge denied the motion on March 26, 1982. Towler never directly appealed his convictions or sentence, allegedly because his attorney told him that he could not challenge his guilty pleas once his motion to reduce the sentence was denied.[6]

In June and November of 1987, more than five years after the entry of Towler's convictions, Towler filed two collateral motions in Florida state court to vacate or set aside his sentence pursuant to Rule 3.850

---

ment is the minimum sentence for a life felony in Florida, and the maximum sentence for a first degree felony. *See* Fla.Stat.Ann. § 775.-082(3) (West 1992). The armed robbery sentence appears to be the result of a compromise struck by the trial judge in response to the parties' dispute over the nature of the original armed robbery charges.

5. There is some confusion in the record as to the precise nature of Towler's understanding of the terms of the plea agreement. Towler has apparently contended throughout much of his post-conviction proceedings that he was told that all five charges would be reduced to third degree offenses in return for his guilty plea. However, Towler submitted an affidavit to the district court below which indicates that Towler believed that only the three second degree offenses would be reduced to third degree, and the potential life felonies reduced to first degree felonies. Because neither understanding is consistent with the convictions entered by the district court, we need not resolve this apparent discrepancy for purposes of this appeal.

6. In support of this allegation, Towler submitted two letters addressed to him which appear to be signed by his attorney. The first letter, dated March 30, 1982, informs Towler, "[s]ince any request for a sentence reduction is addressed to the discretion of the Court, there is no right of appeal from an order denying such a motion. I regret the decision the Court made but there is nothing else that can be done." The second letter, dated June 3, 1982, informs Towler that no transcript of the court proceedings could be provided to Towler because "[t]ranscripts are generally only prepared when there is an appeal of some type. As I have explained to you in the past, Florida does not allow appeals from a guilty plea. Therefore, there are no transcripts." The letter concludes, "I regret the lengthy sentence given you by Judge Lawrence, and the decision not to reduce your sentence. But there is no further action that can be taken at this point."

of the Florida Rules of Criminal Procedure. Neither of Towler's motions have ever been ruled upon by a Florida court. Although Towler has not sought mandamus or an expedited ruling on these motions, he has apparently written the clerk of the state court repeatedly concerning his pending motions.

On June 21, 1989, Towler initiated federal proceedings by filing a petition for writ of habeas corpus relief in the Middle District of Florida. *See* 28 U.S.C.A. § 2254 (West 1977). In his petition, Towler alleged the same three grounds for relief contained in his pending state motions: (1) the ineffective assistance of his appointed counsel; (2) the involuntariness of his guilty pleas;[7] and (3) the sentence imposed was in excess of the maximum sentence allowed by law.[8] On November 1, 1989, the State moved for summary judgment on Towler's petition. The district court referred the matter to a magistrate judge, who prepared a report recommending that Towler's petition be denied. The magistrate judge concluded that an evidentiary hearing was unnecessary because Towler's claims lacked merit on their face. On October 30, 1990, the district court adopted the magistrate's report and recommendation, and denied Towler's petition. Towler now brings a timely appeal of the district court's decision to deny his petition without an evidentiary hearing.

## II. ANALYSIS

■ On appeal, Towler challenges the district court's ruling that the habeas petition did not raise a question as to whether Towler was denied the effective assistance of counsel or whether Towler's guilty pleas may have been unknowing or involuntary. Claims that a petitioner received ineffective assistance of counsel and claims challeng-

ing the voluntariness of guilty pleas both present mixed questions of law and fact, which we review *de novo*. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). If we cannot conclusively determine the merit of Towler's claims from an examination of the petition, supplemented by the undisputed facts of record, we must remand the case for an evidentiary hearing. 28 U.S.C.A. § 2243 (West 1971); *Kennedy v. Dugger*, 933 F.2d 905, 909 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992); *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir.1981), *cert. denied*, 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982).

■ Before we can reach the merits of Towler's claims, however, we must address the State's argument that Towler's petition is procedurally barred because Towler has not shown cause for and prejudice from his failure to comply with Florida's time limitations on collateral motions made pursuant to Rule 3.850. Whether a petitioner's actions or inaction have created a state law procedural bar of particular claims is a mixed question of law and fact. Therefore, we review the district court's determination that Towler was not procedurally barred from raising his claims in federal court *de novo*. *Cf. Fox v. Kelso*, 911 F.2d 563, 568 (11th Cir.1990) (applying mixed question *de novo* standard of review to issues of exhaustion in state prisoner's habeas proceeding).

### A. The Need to Establish Cause and Prejudice

■ On appeal, the State contends that because Towler did not meet the time limitations imposed on Rule 3.850 motions under Florida law,[9] Towler must now show

---

7. Towler bases his involuntariness claims solely on the alleged misrepresentations of his attorney. Towler does not allege that the plea agreement should have been enforced according to his interpretation of its terms, or that the State was ever even aware of his interpretation of the agreement.

8. This claim was dismissed by the district court as purely an issue of state law. *See Branan v.*

*Booth*, 861 F.2d 1507, 1508 (11th Cir.1988). Towler does not challenge the disposition of this claim on appeal.

9. Rule 3.850 provides in relevant part:

No ... motion [other than motions to vacate a sentence in excess of the legal limits] shall be filed or considered pursuant to this rule if filed more than two years after the judgment

812

cause and prejudice to proceed on his federal habeas claims. *See Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977). The magistrate judge and district court below concluded that because the Florida courts never ruled on Towler's motions, a showing of cause and prejudice was unnecessary. The magistrate judge noted that the state court's failure to address Towler's motions made it "impossible to tell whether the state court would have forgiven a procedural default by the petitioner."

The State argues that a procedural bar is imposed by Rule 3.850 itself, which precludes motions from being "filed or considered" outside the two-year limitations period. Fla.R.Crim.P. 3.850. *Cf. Ylst v. Nunnemaker*, —— U.S. ——, ——, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991) (when a state law procedural default prevents the state court from reaching the merits of a petitioner's federal law claim, the claim ordinarily cannot be reviewed in federal court). However, the State's argument is undermined by the fact that Florida courts routinely address time-barred petitions if only to dismiss them on that basis. *See, e.g., Johnson v. State*, 536 So.2d 1009, 1010–11 (Fla.1988); *Delap v. State*, 513 So.2d 1050, 1050 (Fla.1987); *Amazon v. State*, 537 So.2d 170, 171 (Fla.Dist.Ct.App.), *petition for review denied*, 547 So.2d 1209 (Fla.1989). *See also* Fla.R.Crim.P. 3.850 (court may summarily dismiss motion if an examination of the motion, in conjunction with the files and records of the case, conclusively shows that the prisoner is not entitled to relief). Moreover, Florida courts have held that petitions not in substantial compliance with the requirements of Rule 3.850 should be returned to the movant accompanied by a statement setting forth the reasons why the motion does

not comply with the rule. *See Swain v. State*, 355 So.2d 865, 866 (Fla.Dist.Ct.App. 1978). In this case, the State conceded at oral argument that it has been unable to find evidence of *any* action taken by the Florida courts in response to Towler's motions.

At the time Towler filed his habeas petition in federal court, Towler's state motions had been pending without action in the Florida courts for a little over two years and nineteen months, respectively. This lengthy delay alone is sufficient to excuse Towler from state exhaustion requirements.[10] *See Breazeale v. Bradley*, 582 F.2d 5, 6 (5th Cir.1978); *Reynolds v. Wainwright*, 460 F.2d 1026, 1027 (5th Cir.), *cert. denied*, 409 U.S. 950, 93 S.Ct. 294, 34 L.Ed.2d 221 (1972). Because Towler has actually presented his claims in the state courts, we are relieved from the duty to speculate about how Florida courts might rule on Towler's claims—they have been given an opportunity to rule but have seemingly declined the invitation. *Cf. Coleman v. Thompson*, —— U.S. ——, —— n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) (if a petitioner has not exhausted his claim in the state courts, federal court must determine whether state court would find the claim procedurally barred); *Harris v. Reed*, 489 U.S. 255, 269, 109 S.Ct. 1038, 1046, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring) (asserting that federal courts may properly determine whether a petitioner's claim has been procedurally defaulted "where a federal habeas petitioner raises a claim which has *never* been presented in any state forum") (emphasis in original).

This unusual state of affairs leaves us with a record satisfying state exhaustion requirements but completely lacking any state court "judgment" on

and sentence become final unless it alleges (1) the facts upon which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained by the exercise of due diligence, or, (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.

Fla.R.Crim.P. 3.850. Towler unquestionably failed to meet the two year deadline. Towler's petition, which alleges that he discovered the

true nature of his guilty pleas shortly before his sentencing hearing, appears to disqualify him for the first exception to the time limit, and does not allege that the second exception is applicable to his claims.

10. In addition, the State conceded exhaustion on the basis of futility in the district court proceedings below. *See Hollis v. Davis*, 941 F.2d 1471, 1475 (11th Cir.1991) (state may waive exhaustion requirements).

Towler's claims, much less one resting on "adequate and independent state grounds." *See Harris v. Reed,* 489 U.S. 255, 260, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989). In such situations, the legal result is clear. "The mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent [a federal] Court from reaching the federal claim: *'[T]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.'" Id.* at 261–62, 109 S.Ct. at 1042 (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)) (emphasis added).[11] Therefore, we hold that Towler need not show cause and prejudice to prevail on his federal habeas claims.

### B. *The Petitioner's Claims for Habeas Relief*

Before we begin our discussion of the merits of Towler's claims, we re-empha-size the limited nature of our review. The district court determined that Towler's petition was not sufficient on its face to state a claim for habeas relief. When a district court has denied a habeas petition without the benefit of a state or federal evidentiary hearing, our inquiry is limited to a *de novo* review of whether the facts alleged in the petition, if proven, would justify relief.[12] 28 U.S.C.A. § 2243 (West 1971); *Futch v. Dugger,* 874 F.2d 1483, 1485–86 (11th Cir. 1989). If we conclude that Towler's allegations might merit relief, and if Towler's right to relief depends on the resolution of disputed issues of fact, we must remand Towler's petition so that the district court may order an evidentiary hearing on Towler's claims.[13] *See Yordan v. Dugger,* 909 F.2d 474, 478–79 (11th Cir.1990); *Slicker v. Wainwright,* 809 F.2d 768, 770 (11th Cir. 1987). Therefore, we are not called upon to judge the truth or credibility of Towler's allegations for the purposes of this appeal.

**11.** The State cites this Circuit's opinion in *Whiddon v. Dugger* for the proposition that federal courts must treat clearly delinquent applications for state relief as procedurally barred even if the state courts have never ruled on the late application. *See Whiddon v. Dugger,* 894 F.2d 1266 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990). In *Whiddon,* the panel noted that the petitioner filed a late Rule 3.850 collateral motion, concluded the late filing was a procedural default, and held that this constituted adequate and independent state law grounds for precluding federal habeas review. *Id.* at 1266–67. Unfortunately, the *Whiddon* decision does not indicate whether the state courts ever ruled on Whiddon's motion. However, it is clear that Whiddon did receive rulings from the state courts on his direct appeal (which did not include the claims he sought to raise in his federal habeas petition), and on at least one collateral challenge. *See Whiddon v. State,* 516 So.2d 264 (Fla.Dist.Ct.App.1987); *Whiddon v. State,* 431 So.2d 290 (Fla.Dist.Ct. App.), *petition for review denied,* 438 So.2d 834 (Fla.1983). We note that the Florida courts did not issue their final denial of relief in Whiddon's case until November 25, 1987—well over two years after Whiddon's conviction became final. In Towler's case, however, no state court has ever addressed any challenge to Towler's conviction or sentence on either appellate or collateral review. Moreover, contemporaneous and subsequent precedent have consistently re-affirmed the requirement that a state court actually invoke an "independent and adequate" state ground to preclude federal habeas review. *See*

*Johnson v. Singletary,* 938 F.2d 1166, 1173–74 (11th Cir.1991) (en banc), *cert. denied,* — U.S. —, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992); *Harmon v. Barton,* 894 F.2d 1268, 1271–73 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 96, 112 L.Ed.2d 68 (1990). We decline the State's invitation to construe *Whiddon* to relieve the state courts of their obligation to affirmatively invoke their procedural bars in order to cut off federal review of potentially meritorious claims. That interpretation run directly contrary to the Supreme Court's mandate that states actually invoke their procedural bars to cut off federal habeas review. *See Harris,* 489 U.S. at 261–62, 109 S.Ct. at 1042–43.

**12.** Towler has not submitted any documentary evidence supporting the allegations contained in his petition other than his own affidavits. However, corroborating evidence is not required to secure an evidentiary hearing unless the record conclusively refutes Towler's claims. *See Downs–Morgan v. United States,* 765 F.2d 1534, 1538 n. 8 (11th Cir.1985); *Thomas v. Estelle,* 550 F.2d 1014, 1016 (5th Cir.1977); *Johnson v. Massey,* 516 F.2d 1001, 1002 (5th Cir.1975).

**13.** District court determinations in habeas proceedings must be made on a sufficient and adequate record. *Clark v. Blackburn,* 619 F.2d 431, 434 (5th Cir.1980). The record is more likely to be found inadequate where, as here, no state court has ever considered all of the evidence. *See Guice v. Fortenberry,* 661 F.2d 496, 500 (former 5th Cir.1981) (en banc).

### 1. *Ineffective Assistance of Counsel*

Towler's claim of ineffective assistance of counsel is governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In the plea bargaining context, a petitioner seeking to establish ineffective assistance of counsel must demonstrate that (1) counsel's advice and performance fell below an objective standard of reasonableness, and (2) the petitioner would not have pleaded guilty and would have insisted on going to trial in the absence of his attorney's errors. *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985). In this case, Towler's alleges that his attorney's performance was constitutionally deficient because his attorney misrepresented the nature of the plea agreement in explaining the proposed agreement to him, and that he was prejudiced as a result of his attorney's misrepresentations because he would not have entered his guilty pleas had he known the true nature of the agreement. Towler's allegations on both counts are sufficient to warrant an evidentiary hearing.

Although not every misrepresentation by a lawyer that results in a guilty plea rises to the level of constitutionally ineffective assistance, *see Downs–Morgan*, 765 F.2d at 1540–41, this Court has repeatedly held that an attorney's "patently erroneous advice" regarding the nature or consequences of a client's decision to plead guilty falls below the wide range of professional competence demanded by the Sixth Amendment. *See Yordan*, 909 F.2d at 478; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir.1989); *Betancourt v. Willis*, 814 F.2d 1546, 1549 (11th Cir.1987); *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir.1972). If sufficiently egregious, the misrepresentations of Towler's attorney in communicating the terms of the plea agreement to Towler could constitute ineffective assistance. Towler's allegation that his attorney affirmatively misled him as to the degree of the offenses identified in the plea agreement might justify relief, especially where, as here, the alleged misstatements directly affected the range of possible penalties Towler would be subject to as a result of his pleas. *Cf. Thomas v. Dugger*, 846 F.2d 669, 674 n. 1 (11th Cir.1988) (Johnson, J., concurring in part and dissenting in part) (noting that the degree of offense a petitioner pleads guilty to is "not a trivial matter" where the degree of the offense alters the consequences of the plea), *cert. denied*, 493 U.S. 921, 110 S.Ct. 285, 107 L.Ed.2d 265 (1989).

In addition, Towler has sufficiently alleged prejudice resulting from his counsel's misrepresentations. Towler repeatedly alleges that he would not have pleaded guilty to all five offenses in the same degree as charged in the informations. This allegation is circumstantially supported by the fact that Towler did move to withdraw his guilty plea at the sentencing hearing. Indeed, Towler's allegations, if proven, might also support a finding that Towler did not receive effective assistance of counsel during his sentencing hearing. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). If Towler's attorney affirmatively misled the court as to Towler's grounds for seeking a withdrawal of his guilty plea, Towler was prejudiced in his attempt to legally withdraw his plea. *See Castro v. State*, 419 So.2d 796, 800 (Fla.Dist.Ct.App. 1982).

We conclude that the record does not conclusively establish that Towler is not entitled to relief on his ineffective assistance claim. Where the issue is the substance of an attorney-client communication, the record is often of limited usefulness and an evidentiary hearing may be necessary to resolve disputed issues of fact. *See Holmes*, 876 F.2d at 1552–53; *Slicker*, 809 F.2d at 769–70.[14]

---

14. We express no view as to the ultimate merit of Towler's claim. To prevail on the merits, Towler faces a heavy evidentiary burden. He will need to prove (1) that his attorney made the alleged misrepresentation, (2) that his attorney's performance was constitutionally deficient, and (3) that he would not have pleaded guilty had he been properly informed and not misled as to the nature of the charges he was pleading to. *Yordan*, 909 F.2d at 479.

### 2. *Voluntariness of Guilty Plea*

 A defendant who pleads guilty must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). A defendant who has not received the effective assistance of counsel in this regard may not be bound by the plea if as a result the plea was not an informed and voluntary waiver of the defendant's rights. *See McCoy v. Wainwright,* 804 F.2d 1196, 1198 (11th Cir.1986); *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982). A plea induced by the misrepresentations of counsel is ineffective. *See United States v. French,* 719 F.2d 387, 390 (11th Cir.1983), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984).

 In denying Towler's petition, the district court held that the transcript of the plea hearing conclusively refuted Towler's claim that his plea was involuntary. In other words, the district court concluded that any misrepresentations by Towler's counsel were "cured" by the information communicated to Towler in the plea colloquy.[15] The court observed that Towler was fully informed by the trial judge of each charge he pleaded guilty to and each charge's maximum sentence. Moreover, the district court noted that Towler told the trial judge that he understood the nature and consequences of his plea, and that Towler's conduct in the hearing supported his statement.

 In order for Towler's pleas to have been knowing and voluntary, he must have been reasonably informed of "the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available." *LoConte,* 847 F.2d at 751. Courts look at the totality of information held by the defendant at the time he makes his plea, and not merely the information communicated at the plea hearing, to determine if the defendant was adequately informed to make a knowing and voluntary plea. *Id.; Gaddy v. Linahan,* 780 F.2d 935, 944 (11th Cir.1986); *United States v. Deal,* 678 F.2d 1062, 1065 (11th Cir.1982). Therefore, the fact that the trial court properly conducted the plea hearing does not guarantee that the plea is constitutionally valid. *See United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n. 8 (11th Cir.1987); *Downs–Morgan,* 765 F.2d at 1538 n. 9.

Our review of the plea hearing transcript leads us to conclude that the transcript does not conclusively refute Towler's claims. According to Towler, he went into the plea hearing believing that he would be pleading to the third degree version of each offense listed in the plea agreement. The written terms of the plea agreement did not flatly contradict this perception because the agreement listed only the "counts" Towler would plead guilty to, and was silent as to the degree of each offense Towler was pleading to. The trial judge, after asking Towler a series of preliminary questions designed to ensure Towler's competency to plea, opened the discussion of charges by saying:

> Now, you are charged, as your attorney has indicated, in three separate cases, and I want to advise you of those charges and tell you what the maximum penalties are, and these are just the charges. *It does not necessarily mean what you're pleading to,* and I will go over that with you in just a minute, but first of all, the charges. (Emphasis added).

After a run-down of the all the charges with their corresponding maximum sentences, the trial judge turned back to those offenses Towler had agreed to plead guilty to in the plea agreement.

> And by this written plea, you're offering to plead guilty to several of the offenses. And I'm going to tell you what you're offering to plead guilty to under this written plea to be sure that it is consis-

---

**15.** This holding was also essential to the district court's denial of Towler's ineffective assistance of counsel claim. The district court found that the plea hearing conclusively refuted Towler's claim of prejudice in regard to the ineffective assistance claim.

tent with what you understand that you're pleading guilty to.

The trial judge then proceeded to identify those charges listed in the informations that the plea agreement indicated Towler would plead guilty to, and the court reiterated each offense's maximum penalty. Neither party has challenged the sufficiency of the trial judge's pre-plea colloquy. However, this is not conclusive proof that Towler was not prejudiced by his attorney's misrepresentations. *See Slicker,* 809 F.2d at 769–70; *Downs–Morgan,* 765 F.2d at 1538–41. In this case, Towler alleges that based on his attorney's misrepresentations, he interpreted the judge's rendition of offenses as correctly identifying those offenses he had agreed to plead guilty to, but that he interpreted the maximum sentences given as the maximum sentence for each offense *as charged* in the original informations. Towler alleges that he assumed, based on his attorney's representations, that the sentences actually imposed would be adjusted down to reflect the penalties appropriate for third degree offenses.[16] The record as it currently stands is insufficient to resolve conclusively Towler's involuntariness claim. Towler has alleged facts that, if proven, might explain his conduct in the plea hearing as stemming from the misrepresentations of counsel.

### III. CONCLUSION

For the foregoing reasons, we VACATE the district court's decision denying Towler's petition and REMAND the case to the district court for an evidentiary hearing on Towler's ineffective assistance of counsel and involuntary guilty plea claims.

---

**16.** Both the magistrate judge and the district court made much of the fact that Towler attempted to correct the judge on the maximum sentence for armed robbery. However, because the defense counsel's position was that the wording of the original robbery charge would only support a 30–year sentence (rather than life), Towler's intervention would not be inconsistent with his allegations that he thought the judge was reiterating the maximum sentences of each offense as originally charged.